# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NILDA RIOS,** | Civ. No. 2:16-cv-04367-KM |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

Nilda Rios brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security (the "Commissioner") denying Rios's claims for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is AFFIRMED.

## I. BACKGROUND

Rios applied for SSI benefits on February 11, 2013, alleging a February 16, 2009 onset of disability (R 201-207).[1] Her claim was denied initially on July 2, 2013 (R 90-104), and on reconsideration on December 2, 2013 (R 108–110). Rios subsequently requested and received a hearing before an ALJ (see R 111-129, 156–190), at which Rios testified on September 2, 2015 (see R 42–64).

ALJ Dennis O'Leary issued a decision dated October 19, 2015, finding Rios "not disabled" (see R 20-41). On November 25, 2015, Rios filed a request for review of the ALJ's decision (see R 18–19), which the Appeals Council denied on May 27, 2016 (see R 1–9), thereby rendering ALJ O'Leary's

---

[1] Pages of the administrative record (ECF No. 6) are cited as "R _". Pages of the Plaintiff's Brief (ECF No. 10) are cited as "Br. _". Pages of the Defendant's Brief (ECF No. 11) are cited as "Opp. _". Pages of the Plaintiff's Reply Brief (ECF No. 12) are cited as "Reply _".

1

October 19, 2015 decision the final decision of the Commissioner. Rios now appeals that decision to this Court for review under 42 U.S.C. § 405(g).

## II. DISCUSSION

To qualify for Title XVI SSI benefits, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration (the "SSA") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR § 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR § 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* § 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, move to step four. 20 CFR §416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* § 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Social Security Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR § 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedwomy v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (non-precedential). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedwomy*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that [the claimant] was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (non-precedential). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ O'Leary properly followed the five-step process. I summarize his conclusions here:

#### Step 1

At step one, ALJ O'Leary found that Rios had not engaged in substantial gainful activity from the application date of February 11, 2013. (R 28)

#### Step 2

At step two, the ALJ found that Rios had the following severe impairments: obesity, sleep apnea, cervical and lumbar spine impairment, a right knee impairment, and a mood disorder. (*Id.*)

The ALJ declined to find that Rios's alleged thyroid disorder and asthma are severe impairments, reasoning that both are well controlled with medication and impose only a minimal effect on Rios's ability to work. (*Id.*) Substantial evidence supports this conclusion, which Rios does not challenge. (*See* R 76)

4

**Step 3**

At step three, ALJ O'Leary stated that Rios's impairment or combination of impairments neither met nor medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*). With respect to physical impairments, he concluded after a brief but satisfactory discussion that Rios's severe impairments do not meet any of the listed impairments in Section 1.00 (musculoskeletal system impairments), citing a lack of supporting evidence in Rios's medical record as the basis for his finding. (*Id.*)

The ALJ also found that Rios's mental impairments, alone and in combination, did not meet or medically equal listing 12.04, which concerns depressive, bipolar and related disorders.[2] Here, ALJ O'Leary offered a lengthy

---

[2] A claimant meets or medically equals listing 12.04, Depressive, bipolar and related disorders, when he or she either satisfies both the paragraph A and paragraph B criteria, or both the paragraph A and paragraph C criteria of that listing.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar disorder. To satisfy the Paragraph B, a claimant must demonstrate an extreme limitation in one, or a marked limitation in two, of the following areas of mental functioning: (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; and (4) Adapt or manage oneself. To satisfy the Paragraph C criteria, the claimant must demonstrate that his or her mental disorder is "serious and persistent," meaning the existence of the disorder has been medically documented for at least two years and there is evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that diminishes the signs and symptoms of the disorder, and (2) a minimal capacity to adapt to changes in the environment or demands not already part of daily life.
https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_04; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Until recently, and under the version of the medical listings ALJ O'Leary considered, Paragraph B of listing 12.04 required the claimant to demonstrate that his or her disorder caused at least two of the following: (1) "Marked restriction of activities of daily living"; or (2) "Marked difficulties in maintaining social functioning"; or (3) "Marked difficulties in maintaining concentration, persistence, or pace"; or (4) "Repeated episodes of decompensation, each of extended duration . . . ." Paragraph C required:
> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or

5

written evaluation of the evidence. First, with respect to Paragraph B criteria, he observed that Rios has only mild limitations in daily living; "she is able to attend to self-care tasks, cook, clean, shop, drive, and negotiate public transportation independently." (R 29 (citing R 230–237, 246–253, 583–586)

ALJ O'Leary concluded that Rios also has only mild difficulties in social functioning. Although Rios reported that she does not socialize, the report of Dr. Perdomo, a consultative psychologist, indicates that Rios participates in group therapy; is organized, focused, and uses coherent and relevant speech; and shows no psychosis or disordered thought. (R 29 (citing R 583–586) The ALJ also observed that state psychological examiners concluded that Rios is not significantly limited in her ability to work in coordination with or near others. (R 29; *see* R 74–78)

Next, ALJ O'Leary found that Rios has moderate difficulties in concentration, persistence, and pace. He based this finding primarily on state psychological examiners' reports. The state examiners reported that Rios is moderately limited in her ability to maintain attention and concentration, perform activities on-schedule, and perform at a consistent pace. (R 29 (citing R 66–80, 82–97)) In contrast, Dr. Perdomo's report showed Rios to have only mild impairment in short-term memory, good long-term memory, fair concentration, and orientation to time, place, and person. (R 29; *see* R 583–585) ALJ O'Leary also observed that Rios has experienced no extended periods of decompensation. (R 29)

> psychosocial support, and" any of three symptoms: 1) repeated episodes of decompensation; 2) a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would cause the individual to decompensate; or 3) a history of one or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.

See *Kovach v. Comm'r of Soc. Sec.*, No. CV 15-6999 (KM), 2017 WL 1095037, at *4 (D.N.J. Mar. 22, 2017); *Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016). (R 28–30)

6

Substantial evidence supports the ALJ's conclusion concerning the Paragraph B criteria. A claimant meets Listing 12.04, however, if her medical evidence satisfies the Paragraph A and B criteria *or* the Paragraph A and C criteria. (*See* n.2, *supra*)

Therefore, the ALJ also determined that Rios's medical evidence failed to support Paragraph C findings. He found that Rios's mental impairments have not caused "repeated episodes of decompensation, a residual disease process resulting in marginal adjustment, or a history of inability to function outside of a highly supportive living arrangement." (R 29) Having reviewed the record evidence, I find that substantial evidence supports the ALJ's finding that the Paragraph C criteria are not met, even in light of the revised criteria. (*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.04; *cf.* R. 77 ("[Claimant] can learn and perform simple, routine tasks."); R 78 (indicating no limitations or only moderate impairments in various "adaptation limitations")).

### Step 4 – RFC and Ability to Perform Past Work

Next, ALJ O'Leary defined Rios's RFC as follows:

> **[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to frequent but not continuous fine fingering and manipulation with the right hand, no limitation with the left hand. The claimant is limited to simple, repetitive tasks.**

(R 30).³

---

3   The Social Security Administration defines "Light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as

7

The ALJ thoroughly considered the record evidence before arriving at this RFC, following a two-step process in which he determined (1) whether the evidence supports the existence of medically determinable physical or mental impairments and whether the impairments could reasonably be expected to produce the pain and other symptoms Rios reports; and (2) the extent to which the "intensity, persistence, and limiting effects" of Rios's symptoms limit her functioning, assigning credibility-based weight to statements concerning intensity, persistence, and limiting effect in the record. (R 30)[4]

*1. Physical Limitations*

First, the ALJ addressed Rios's allegations that she cannot work because of physical limitations consisting of sleep apnea, spinal impairment, a right knee implant, neck and back pain, and pain and weakness in her hands. (R 30 (citing R 575–578) He surveyed the evidence supporting Rios's physical impairments.

Rios's medical records included 2013 and 2015 spinal MRI and x-ray results indicating bulging discs, spondylosis, and multilevel degenerative disc disease. (R 31; *see* R 283, 295, 537, 646) Additionally, 2012 and 2014 x-rays of

---

loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

[4] SSR 16-3p eliminated the term "credibility" from the agency's sub-regulatory policy and was issued after ALJ O'Leary issued his October 22, 2015 decision. *See Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016). Under the new guidance of SSR 16-3p, however, ALJs are still called on to (1) determine whether the claimant has a medically determinable impediment that could reasonably be expected to produce the claimant's alleged symptoms and (2) evaluate the intensity and persistence of the claimant's symptoms, based on the record evidence as a whole. This is the same responsibility with which ALJs were charged under the agency's previous guidance. *See Cole v. Colvin*, No. 15-3883, 2016 WL 3997246, at \*1 (7th Cir. July 26, 2016). ("[T]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."); *Murnane v. Colvin*, No. CV 15-7704 (KM), 2017 WL 548942, at \*6 (D.N.J. Feb. 10, 2017).

Rios's right knee showed mild arthritic changes (R 31; see R 282, 285–286), and a 2014 MRI of the right knee showed moderate medial compartment arthritic change and associated meniscal tearing (R 31; see R 631–632). Moreover, 2012 and 2013 EMG nerve conduction studies showed lumbo-sacral radiculopathy, mild sensory peripheral neuropathy in the lower extremities, moderate right sensorimotor carpal tunnel syndrome, and mild left sensory carpal tunnel syndrome. (R 31; see R 288, 372, 573, 597)

ALJ O'Leary also considered: (1) polysomnography results from February 2015 showing severe obstructive sleep apnea; (2) Rios's obesity (R 31–32 (citing R 575)); and (3) an August 2015 report of neurologist Dr. Roblejo, which reported that Rios scored 5/5 on a motor examination, showed intact sensation, and 1+ deep tendon reflexes in the upper extremities and patellars, but an absent ankle jerk reflex (R 31; see R 704).

The ALJ considered this medical evidence in the context of record evidence that Rios is capable of performing a range of light exertional work. (R 30–31) In support of Rios's light work capabilities he noted the limited treatment records since 2013; the fact that Rios had no surgical interventions for her neck, back, or wrists; and Rios's normal musculoskeletal findings, gait, and motor and sensory examination results. (R 31) He also observed that in Rios's October 2013 consultative psychologist report, Dr. Perdomo noted that Rios had walked six blocks to his office. (R 31; see R 584)

The report of a consultative orthopedist, Dr. Potashnik, also supported a "light work" RFC. Dr. Potashnik observed in June of 2013 that Rios was in no acute distress, was able to walk normally without assistance, and exhibited a functional range of motion and normal strength in the upper and lower extremities with only spinal and knee tenderness, shoulder discomfort, and burning sensations in the forearms. Dr. Potashnik opined that Rios might be limited only in activities requiring repetitive use of the hands. (R 32; see R 575–576)

ALJ O'Leary gave "some weight" to Dr. Potashnik's findings, but less to the portion of Dr. Potashnik's opinion concerning Rios's manipulative limitations. O'Leary reasoned that the manipulative limitations were consistent only with EMG test results; Rios had not received any sort of treatment for carpel tunnel syndrome. (R 34)

The state medical consultant's report also stated that Rios could perform light work, finding Rios capable of carrying up to twenty pounds occasionally and ten pounds frequently; of walking or standing for up to six out of eight hours; and of occasionally climbing, stooping, keeling, crouching, or crawling. (R 32; see R 73, 75–76) Upon reconsideration, a second state medical consultative examiner confirmed these findings. (R 32; see R 92–93)

ALJ O'Leary gave some weight to the state medical consultants' reports, crediting their consistency with Rios's generally benign examination findings, Rios's lack of significant or consistent treatment, and her reported daily living activities. (R 34)

The ALJ gave "little weight" to two other items in the record: (1) assessments completed in connection with a Department of Health Services employment evaluation, which stated that Rios cannot work, (R 34; see 544, 589), on the grounds that the evaluation provided "non-specific statements that do not provide a function-by-function assessment of [Rios's] limitations and abilities"; and (2) a 2010 worker's compensation report by Dr. Horwitz, a forensic examiner hired for the purpose of a worker's compensation proceeding. (R 34; see R 626–630) In addition to being completed nearly three years prior to the relevant period, Dr. Horwitz's report has minimal probative value, the ALJ explained, because New Jersey's workers compensation procedures and legal standards differ dramatically from those used in Social Security disability proceedings, and physicians' reports in the workers compensation setting are well known for overstating the extent of a claimant's injuries and disabilities. (R 34)

### 2. *Mental Limitations*

The ALJ addressed Rios's allegations that she cannot work because of symptoms related to her mood disorder: insomnia, crying spells, anhedonia, lack of energy, irritability, and anxiety. (R 32 (citing R 583) ALJ O'Leary found that Rios's alleged symptoms lack supporting medical evidence. He reiterated the results of the state psychological consultants' assessments of Rios (R 32 (citing 2A, 2F); *see* Section II.B. at Step 3, *supra*), to which he assigned "some weight." He noted that Dr. Perdomo had assigned Rios a Global Assessment of Functioning ("GAF") score of 50 to 60, "indicating significant symptoms, affecting occupational functioning." (R 32 (citing R 856)) Nevertheless, ALJ O'Leary stated that because GAF scores "represent a subjective interpretation of the claimant's general functioning at the particular time of the assessment," he gave Rios's GAF score "[l]ittle weight." (R 34)

ALJ O'Leary also observed that Rios attended group therapy in 2013, where she "consistently presented with a depressed and anxious mood but was active and attentive." (R 32 (citing R 415–528) He referred to an August 2015 examination in which Rios was similarly reported to have "presented as appropriate, and oriented to person, place and time," with normal fluency, recall, calculation, and appropriate affect. (R 32 (citing R 704))

In light of this record evidence, ALJ O'Leary concluded that Rios's allegations were inconsistent with the objective medical evidence. He further illustrated this conclusion with examples. First, he contrasted Rios's testimony that she spends all of her time taking medications with conflicting testimony that she takes walks to the market and drives her car to visit her grandson. (R 33; *see* R 53–55 583–585, 246–252, 584) He also noted Rios's admitted ability to cook, attend to self-care, clean, shop, and take public transportation. (*See id.*)

Second, ALJ O'Leary rejected Rios's allegation that her inability to learn English suggests cognitive loss; the ALJ observed that Rios is in her 50s (an age at which learning a new language would be difficult for most people) and

11

that even a neurologist told Rios that she had no cognitive problems. (R 33; see R 60)

Third, ALJ O'Leary considered that Rios did not accurately report when she had last worked. She reported that she last worked in February 2009 (see R 238), but admitted at her hearing that she had looked for work since leaving that job and even worked as a babysitter for a few months in 2012 until she stopped because she was "nervous." (R 33; see R 49–50)

Finally, the ALJ pointed to discrepancies in Rios's testimony concerning the frequency with which she attends a clinic; she testified that she goes every day but also admitted that she is not currently going to the clinic. (R 33; see R 50)

### 3. Past Relevant Work

Comparing Rios's RFC to the physical and mental demands of her past work as a production assembler and also considering the testimony of a vocational expert ("VE") who testified that production assembler (DOT code no. 076.687-010) involves light, unskilled work (SVP 2), ALJ O'Leary determined that Rios is capable of performing her past relevant work. Therefore, without reaching Step 5, he determined that since February 11, 2013, Rios has not been under a disability as it is defined in the Social Security Act. (R 35)

### C. Rios's Appeal and Analysis

Rios asks for reversal or remand of the ALJ's decision based on any of three errors she assigns to the ALJ's analysis. First, the ALJ should have undertaken a more thorough Step 3 analysis of the 1.00 listings, says Rios. She argues that the ALJ should have included an analysis of the combined effect of all of her impairments. (Br. 35) Second, Rios says ALJ O'Leary failed to consider and explain his reasons for discounting certain medical evidence in the record. (Id. 37) Third, Rios argues that light work is beyond her capability; medical evidence contradicts the ALJ's findings concerning her ability to perform any light work, she says. (Id. 37–38)

I find that ALJ O'Leary sufficiently evaluated the record evidence and that substantial evidence supports the ALJ's findings. Any minor oversights or flaws in the ALJ's analysis amount to no more than harmless error.

1. *Medical Equivalence Analysis*

At Step 3, if an ALJ does not find that any single impairment meets those described in the Appendix 1 listings, the ALJ must consider whether the claimant's impairments in combination are medically equivalent to one of the Appendix 1 impairments. The regulations set forth three ways in which an ALJ might find medical equivalence:

> (1)(i) If you have an impairment that is described in appendix 1, but—
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
>
> (3) If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526.

With respect to medical equivalence, the U.S. Court of Appeals for the Third Circuit has explained:

> Although the claimant bears the burden of proving
> that his impairments equal or meet those listed in
> Appendix 1, if a claimant's impairment does not match
> one listed in Appendix 1, the ALJ is required to
> perform a comparison between the claimant's
> impairment(s) and those listed in Appendix 1. 20
> C.F.R. § 404.1526(b). This court has stated that it is
> the ALJ's "responsibility ... to identify the relevant
> listed impairment(s)" and " 'develop the arguments
> both for and against granting benefits.' " *Burnett v.
> Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n. 2 (3d
> Cir.2000) (quoting *Sims v. Apfel*, 530 U.S. 103, 111,
> 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)).

*Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151–52 (3d Cir. 2008) (non-precedential). In *Torres*, where the ALJ's medical equivalence analysis consisted of a one-sentence paragraph addressing both steps two and three and "failed to combine [the claimant's] many medical impairments and compare them to analogous Appendix 1 listings," the court concluded that it had no way to meaningfully review the ALJ's decision and thus remanded the case for fuller development of the record and explanation at Step 3. *Id.* at 152.

Rios argues that I should reach the same conclusion with respect to ALJ O'Leary's concise Step 3 analysis. He stated:

> The record fails to establish that the claimant has an
> impairment or combination of impairments that meets
> or medically equals the criteria of any listed
> impairment. The medical evidence of record does not
> document signs, symptoms, and/or laboratory
> findings indicating any impairment or combination of
> impairments severe enough to meet the criteria of any
> listed impairment. No treating, examining, or non-
> examining medical source has mentioned findings or
> rendered an opinion that the claimant's impairments,
> singly or in combination, medically equaled the criteria
> of any listed impairment. Specific consideration has
> been given to the applicable sections of 1.00 of the
> listed impairments.

(R 28; *see* Br. 34–35) The Commissioner argues that this discussion, though brief, is satisfactory.

The Commissioner adds that Rios was not entitled to a more thorough analysis because she failed to carry three evidentiary burdens. First, the Commissioner suggests that a claimant has the burden of identifying relevant listings at Step 3, and that Rios failed to meet that burden. (*See* Opp. 10–11)[5] I am not persuaded by this specific argument. Indeed, the Third Circuit has suggested that the claimant's evidentiary burden does *not* include the burden to find and identify the appropriate listing:

> While the burden is on the claimant to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment, *see Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir.1992), it is unclear from the regulations or caselaw whether a claimant must identify the relevant listing(s). The applicable regulations indicate that it is within the realm of the ALJ's expertise to determine the closest applicable listed impairment, based on the medical evidence, when examining whether a claimant's impairments meet or equal a listed impairment:

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000).

More persuasive is the Commissioner's second argument (*see* Opp. 11)—that a claimant has "the burden of presenting sufficient *evidence* that her medical problems were of listing severity." *Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005) (emphasis added). In *Williams*, where a claimant's evidence was insufficient to show that her impairments were of "listing severity," and the ALJ concluded that because "the record 'does not disclose medical findings which meet or equal in severity the clinical criteria of any impairment listed[,]' . . . the ALJ's explanation . . . [was] not so insufficient as to be beyond meaningful judicial review . . . ." *Id. See also Smith v. Astrue*, No. 10-CV-5566 DMC, 2012 WL 1044301, at *10 (D.N.J. Mar. 28, 2012) (ALJ

---

[5] For example, the Commissioner cites *Ballardo v. Barnhart*, 68 F. App'x 337, 338 (3d Cir. 2003), where the Third Circuit determined that "the ALJ was not required to articulate specific reasons that Ballardo's impairment was not equal in severity to any of the statutorily listed impairments." *Id.* But this holding resting on the fact that the claimant had "presented essentially no medical evidence of a severe impairment" for the relevant time period. *Id.*

did not err in failing to consider a listing where the record did not support the listing's criteria).

I agree with the Commissioner that the medical evidence in the record falls short of showing impairments of the severity necessary to meet any of the Appendix 1, 1.00 listings, whether individually or in combination. The record contains no evidence of surgery or surgical arthrodesis resulting in Rios's inability to walk (1.03) or of amputation, fracture, or soft tissue injury (1.05-1.08). The record does include medical evidence vaguely relevant to listings 1.02 or 1.04,[6] and in theory, obesity could combine with other impairments.

---

[6] 1.02, Major dysfunction of a joint(s), requires:

> [G]ross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_02; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

1.04 Disorders of the spine requires:

> [C]ompromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

*See* 20 C.F.R. Pt. 404, Supt. P, App. 1, § 1.00(Q) ("The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.") But in this case, there was no record evidence before the ALJ sufficient to establish that Rios's obesity, even in combination with other ailments, had significant clinical consequences.

Although an ALJ must proceed stepwise through the five-step analysis, I also find that the ALJ's thorough RFC evaluation (*see* Section II.C.2, *infra*), which includes discussion of all of Rios's impairments that would be relevant at Step 3, further supports this conclusion. In other words, to the extent ALJ O'Leary's Step 3 analysis is less thorough than it should be, his RFC analysis makes it clear that any procedural error was harmless.[7]

---
or

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_04; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[7] Because I am satisfied that substantial evidence supports the Commissioner's medical equivalence analysis, I need not reach the third burden the Commissioner asks me to impose on Rios: the burden to show that the ALJ's shortcomings at Step 3 cause harm—i.e., alter the outcome of the decision. (*See* Opp. 12 (citing *Gonzalez v. Comm'r of Soc. Sec.*, No. CV 14-810 (ES), 2016 WL 1306012, at *5 (D.N.J. Apr. 4, 2016) ("[W]here a plaintiff alleges error by the ALJ, 'the burden of showing harmfulness is normally on the party attacking the agency's determination.'" (quoting *Shinseki v. Sanders*, 556 U.S. 396, 398 (2009)). While I think this burden might go too far under certain circumstances (surely it cannot be that a claimant must *prove* her disability before a district court can remand for a more thorough evaluation), my finding of harmless error here essentially moots that discussion.

*2. Omitted Medical Evidence and Rios's Light Work RFC*

I address Rios's second and third arguments in combination, as the sufficiency of the ALJ's RFC evaluation necessarily bears on whether substantial evidence supports Rios's ability to perform light work.

Rios argues that ALJ O'Leary failed to discuss or provide reasons for discounting several of her medical impairments. In particular, she points to podiatric treatment records that the ALJ did not weigh and incorporate into the RFC. (Br. 37) Rios also details her history of neck, back, and right knee, supported by MRI, x-ray, and EMG diagnostics. (*Id.* 39–41) She admits that the ALJ considered some of this evidence, but claims he overlooked January 2013 and June 2015 MRIs and March 2015 x-rays. (*Id.* 41) Further, Rios urges that ALJ O'Leary failed to consider whether her obesity caused any physical or mental RFC limitations, as required by SSR 02-1p. *See Titles II & Xvi: Evaluation of Obesity*, SSR 02-1P (S.S.A. Sept. 12, 2002) (stating that the SSA considers obesity to determine, *inter alia*, whether an individual can do past relevant work (Step 4)).

First, the Commissioner responds that Rios did not submit her podiatric treatment records to the SSA until after ALJ O'Leary had rendered his decision. (Opp. 14) Rios seems to concede this point in her reply brief and does not make a case for remand under sentence six of 42 U.S.C. § 405(g) (*see generally* Reply).[8] *See Matthews v. Apfel*, 239 F.3d 589, 592–93 (3d Cir. 2001) ("[W]e have

---

[8] The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the

18

recognized that evidence first presented to the district court must not only be new and material but also be supported by a demonstration by claimant of 'good cause for not having incorporated the new evidence into the administrative record.'" (quoting *Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984)). Therefore, the fact that ALJ O'Leary's did not consider these records—at the RFC stage as well as at Step 3—was not an error.

I also do not think the ALJ committed significant error in formulating Rios's RFC simply because (as Rios alleges) he failed to expressly discuss a few of many MRI and x-ray examinations. The records Rios claims the ALJ missed (for which Rios does not provide specific citations) do not substantially alter the picture of Rios's musculoskeletal capabilities. At any rate, it appears that the ALJ *did* discuss certain if not all of these records. (*Compare* Opp. 41 (claiming the ALJ "fail[ed] to cite to MRI evidence from January 2013 and June 2015 and x-rays from March 2015."), *with* R 31 (ALJ's decision noting January 2013 and June 2015 spinal MRIs and March 2015 spinal x-rays, *see* R 283, 646, 730–731).)

Moreover, Rios points to no medical evidence indicating that her obesity impacts her physical or mental functioning. The ALJ stated in his decision that he considered Rios's obesity, expressly noting Rios's height and weight. (R 32) That is sufficient.

I do not suggest that the ALJ's conclusion is the only one that could be drawn from this record. I do find, however, that substantial evidence supports the RFC that the ALJ did assign to Rios. Accordingly, Rios's ability to perform light work to the extent described in the RFC has substantial support as well.

---

> court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405.

19

### III. CONCLUSION

For the foregoing reasons, ALJ O'Leary's decision is AFFIRMED.

An appropriate order accompanies this Opinion.

Dated: August 23, 2017

KEVIN MCNULTY
United States District Judge